IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| SHAPIRO FAMILY PARTNERSHIP, § § Plaintiff, § § v. § Civil Action No. 2:18-cv-00110-D-BP § ASPEN SPECIALTY INSURANCE § COMPANY, § § Defendant. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

This case arises out of a claim for hail and wind damage to commercial properties in Amarillo, Texas that resulted from a June 2017 storm. The owner of the properties, Shapiro Family Partnership ("Shapiro") filed its Motion to Compel Appraisal and to Appoint Umpire (ECF No. 15) on July 26, 2018. The insurer involved, Aspen Specialty Insurance Company ("Aspen"), filed its Response in Opposition to Shapiro's Motion to Compel Appraisal and to Appoint Umpire (ECF No. 19) on August 15, 2018. Shapiro replied on August 21, 2018 (ECF No. 21), and Aspen's Sur-Reply was ordered to be filed on this date. Senior United States District Judge Sidney A. Fitzwater referred the case to the undersigned for pretrial management by Standing Order of Reference (ECF No. 6) entered on June 27, 2018. After considering the pleadings and applicable law, the undersigned **RECOMMENDS** that Judge Fitzwater **GRANT** Shapiro's Motion to Compel Appraisal and to Appoint Umpire (ECF No. 15) in part and order the Clerk of the Court to administratively close the case pending completion of the appraisal process.

I.   **BACKGROUND**

Aspen removed this case from the 320th District Court of Potter County, Texas under 28 U.S.C. § 1332, alleging diversity jurisdiction. (ECF No. 1 at 2, ¶ 4). Shapiro is a Texas Limited

Partnership doing business in Potter County, Texas. (ECF No. 11 at 1, ¶ 2). Aspen is a surplus lines insurer organized under the laws of the state of North Dakota and doing business in Texas. (*Id.* at ¶ 3; ECF No. 1 at 3, ¶ 8). Aspen's principal place of business is in Connecticut. (ECF No. 1 at 3, ¶ 8). The parties agree that Aspen provided insurance coverage for several properties (the "Properties") owned by Shapiro. (ECF No. 11 at 2, ¶ 6; ECF No. 12 at 2, ¶ 6). The parties also agree that the name of the insurance policy is PRAFNTK16. (*Id.*). The parties, however, dispute the location and number of properties for which Aspen provided insurance coverage and the coverage dates. (*Id.*).

Shapiro alleges that the Aspen policy covered forty-five commercial properties that were damaged in the June 2017 storm. (ECF No. 11 at 3, ¶ 11). Aspen admits that Shapiro provided it with notice regarding the hail damage to Shapiro's properties. (ECF No. 11 at 2, ¶ 8; ECF No. 12 at 3, ¶ 8). Upon receiving notice, Aspen allegedly conducted a "negligent, incompetent, and fraudulent investigation . . . associated with the loss that miscalculated the scope and value of the damage." (ECF No. 11 at 2, ¶ 9). Shapiro further alleges that Aspen failed to investigate the damage to other Shapiro-owned properties that it knew or should have known might have resulted from the storm. (*Id.*).

On October 31, 2017, Shapiro allegedly notified Aspen that it disputed Aspen's valuation of the hail damage to the properties. (*Id.* at ¶ 10). Shapiro informed Aspen that it was invoking the appraisal procedure identified in the Building and Personal Property Coverage Form. (*Id.* at Exh. B). The specific language related to the appraisal clause in the Coverage Form is as follows:

> **2. Appraisal** . . . If [Aspen] and [Shapiro] disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

2

> **a**. Pay its chosen appraiser; and
> **b**. Bear the other expenses of the appraisal and umpire equally.
> If there is an appraisal, [Aspen] will still retain [its] right to deny the claim.

(*Id.* at Exh. C, at 2, ¶ E2). In addition to invoking its appraisal rights in the October 31, 2017 notice, Shapiro named Mickey L. Jones as its appraiser and demanded that Aspen select an appraiser. (*Id.* at Exh. B, at 1, ¶ 2). Aspen denies receiving Shapiro's October 31, 2017 notice. (ECF No. 12 at 3, ¶ 10).

Shapiro alleges that Aspen committed multiple violations of the Texas Insurance Code by refusing to make "meaningful attempts to investigate and resolve Shapiro's claim" and that Aspen "attempted to mischaracterize and wrongfully manipulate . . . the value of [its] claim." (ECF No. 11 at 3, ¶ 12). Shapiro alleges that it provided Aspen with necessary information to pay the claim and that it met its contractual obligations under the insurance policy. (*Id.* at 2, ¶ 7; p. 4, ¶ 13). Shapiro further alleges that Aspen refuses to pay the amounts owed under the policy in breach of the contract, common law, and its statutory obligations. (*Id.* at 4, ¶ 14). Additionally, Shapiro alleges that Aspen engaged in unfair settlement practices in failing to promptly and fairly effectuate an equitable settlement of its claim. (*Id.* at 6-7, ¶¶ 18-19). Shapiro also alleges that Aspen was negligent. (*Id.* at 7-8, ¶ 20). Aspen contests Shapiro's allegations. (ECF No. 12).

In its Motion to Compel Appraisal and to Appoint Umpire (ECF No. 15), Shapiro requests that the Court appoint an umpire because Aspen failed to respond to Shapiro's July 2, 2018 email in which Shapiro submitted four umpire candidates. (*Id.* at 2, ¶ 3). Shapiro alleges that Aspen did not submit its own list of umpire candidates either. (*Id.*). Shapiro asserts that the parties are at an impasse and that the Court should now appoint an umpire. (*Id.*). Shapiro claims that appraisal is appropriate because the parties dispute the scope and valuation of damage to the Properties. (*Id.* at ¶ 4).

3

Shapiro provides the Court a list of umpire candidates; requests the Court to enter a timeline and scheduling order for the appraisal; order that the umpire physically inspect the properties if a dispute arises between the appraisers and that the appraisers and their consultants be able to attend the umpire's inspection of the properties; and order that the umpire issue a written decision of the estimated property damage. (ECF No. 15 at 2-4, ¶¶ 6-9). Finally, Shapiro requests that the Court: (1) abate pending litigation deadlines contingent upon the outcome of the appraisal process; and (2) award it attorneys' fees, actual damages, post-judgment interest and costs, treble and exemplary damages, 18% penalties and interest as allowed by law, and (3) grant any other relief that the Court finds appropriate. (ECF No. 11 at 8, ¶ 23; ECF No. 15 at 5, ¶ 12).

In its Response in Opposition to Shapiro's Motion, Aspen asserts that appraisal is premature because the parties have not reached the point of a dispute in their respective valuations of the Properties and the amount of loss suffered by Shapiro. (ECF No. 19 at 8). Aspen alleges that Shapiro has not set forth the specific amount of loss that is disputed and has not corresponded with Aspen regarding necessary information that Aspen needs to complete its investigation. (*Id.* at 7-8; *see also* Exh. A-D). Aspen disputes Shapiro's allegation that Aspen has completed an investigation of the loss. Aspen agrees to the appointment of Mark Packard (as suggested by Shapiro) as umpire if the Court finds that appraisal is necessary at this time. (*Id.* at 13-14). Aspen objects to Shapiro's proposed appraisal timeline and scheduling order suggestion because it does "not provide sufficient time for Aspen to complete its investigation [of] the claim." (*Id.* at 15). Finally, Aspen requests that if the Court orders appraisal that it require the umpire to "include a breakdown of [its] damage estimate by causation, specifying how much damage is attributed to each divisible loss and quantifying damages under each side's theories of causation and coverage." (*Id.* at 16).

In its Reply, Shapiro alleges that a dispute exists between the parties as to the cause of the property loss and total valuation of the claim. (ECF No. at 2-3). Shapiro agrees with Aspen to the

4

Court's appointment of Mark Packard as umpire in the appraisal process. (*Id.* at 4). Finally, Shapiro argues that the appraisal process should not be delayed until Aspen completes its investigation because then the appraisal process will no longer be independent, "competent," or "impartial" if the appraisal panel is waiting to receive information from Aspen. (*Id.* at 4-5). After obtaining leave of Court, Aspen filed a Sur-Reply with an accompanying brief (ECF No. 22-2) to address Shapiro's rebuttal arguments proffered in its Reply in support of its Motion. The undersigned has considered the Sur-Reply in this Findings, Conclusion, and Recommendation.

## II.   LEGAL STANDARDS

There is no specific federal statute or rule which expressly authorizes a motion to abate. *PJC Bros., LLC v. S&S Claims Serv., Inc.*, 267 F.R.D. 199, 200 n.2 (S.D. Tex. 2010) (citation omitted). Thus, "[w]hile federal courts have authority to entertain such preliminary motions, the decision to do so is largely a matter of judicial discretion, 'which must be exercised in light of the policy against unnecessary dilatory motions.'" *Id.* (quoting 5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1360 (3d ed. 2004)) (citing 28 U.S.C. § 2105).

"Interpretation of insurance contracts in Texas is governed by the same rules as interpretation of other contracts." *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994). The Court will consider the entire instrument so that none of the provisions will be rendered meaningless. *R & P Enters. v. LaGuarta, Garvel & Kirk, Inc.*, 596 S.W.2d 517, 518 (Tex. 1980). "When a contract is unambiguous [the Court] will enforce it as written." *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 862 (Tex. 2000) (citing *Heritage Resources, Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996)). But if a contract is ambiguous—that is, if it is reasonably susceptible to conflicting interpretations—the ambiguity is "construed against the drafter." *Liberty Surplus Ins. Corp. v. Exxon Mobil Corp.*, 483 S.W.3d 96, 101 (Tex. App.—Houston 2015, pet.

denied) (citing *Gonzalez v. Mission Am. Ins. Co.*, 795 S.W.2d 734, 737 (Tex. 1990)). In an insurance policy, this means that "an ambiguous policy is construed against the insurer." *Id.*

### III.   ANALYSIS

Appraisals are "intended to take place before suit is filed; [the Texas Supreme] Court and others have held it is a condition precedent to suit." *Guthrie v. State Farms Lloyds*, No. EP-15-CV-307-PRM, 2015 WL 13134989, at *2 (W.D. Tex. Dec. 17, 2015) (citing *State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 894 (Tex. 2009)). Under Texas law, an insured's failure to comply with a condition precedent constitutes grounds for abating the suit. *See State Farm Gen. Ins. Co. v. Lawlis*, 773 S.W.2d 948, 949 (Tex. App—Beaumont, 1989, no writ); *see also Woodward v. Liberty Mutual Ins. Co.*, No. CIV.A. 3:09-CV-0228-G, 2010 WL 1186323, at *4, *6 (N.D. Tex. Mar. 26, 2010) (abating the lawsuit until the completion of the appraisal).

An insurer may compel an insured to submit to the appraisal process under the contractually agreed-upon policy's appraisal provision. *See In re Allstate Cnty. Mut. Ins. Co.*, 85 S.W.3d 193, 195 (Tex. 2002) (finding that an insurer and insured were contractually required to use an appraisal to set the value regarding the amount of loss). The Court "must presume that parties to a contract intend every contractual provision to have some meaning." *Atl. Lloyds Ins. Co. v. Butler*, 137 S.W.3d 199, 219 (Tex. App.—Houston 2004, pet. denied) (finding that the appraisal provision requires the parties to obtain an appraisal before filing suit, and thus the parties must adhere to the unambiguous terms of the appraisal provision).

Courts have enforced appraisal clauses as "'clear and unambiguous' in entitling the insurer 'to have the appraisal procedure followed and the underlying suit abated until the completion of that procedure.'" *Johnson v. Liberty Mut. Fire Ins. Co.*, No. 4:14-CV-604, 2015 WL 11170153, at *2 (E.D. Tex. Oct. 30, 2015) (quoting *Butler v. Prop. & Cas. Ins. Co. of Hartford*, No. CIV.A. H-10-3613, 2011 WL 2174965 (S.D. Tex. June 3, 2011)) (internal citations omitted); *see also James*

6

*v. Prop. & Cas. Ins. Co. of Hartford*, No. CIV.A. H-10-1998, 2011 WL 4067880, at *3 (S.D. Tex. Sept. 12, 2011) ("Abatement of the entire case pending appraisal is therefore appropriate and in the interest of the efficient and inexpensive administration of justice."). A policy generally includes appraisal provisions to provide for a "potential resolution of the. . . dispute, such that the value of proceeding further in the litigation process will only be evident after the completion of the appraisal process." *Torres v. State Farm Lloyds*, No. CIV.A. 7-14-CV-421, 2015 WL 12942070, at *1 (S.D. Tex. Feb. 3, 2015) (finding that if the court were to continue to proceed with the case, it would "ultimately result in wasted time, money, and energy if the appraisal process resolves the case or significantly narrows the issues.").

In this case, the insured, Shapiro, seeks to invoke the appraisal procedure contained in the insurance policy at issue. Although Aspen contends that it is premature, neither of the parties has cited any authority that insurance disputes must reach a certain stage before an appraisal is appropriate. Nor has the undersigned's own research revealed any such authority. Because the appraisal process may result in a resolution of the dispute between the parties, the undersigned recommends that Shapiro's Motion be granted to the extent that the Court order that Mark Packard serve as the umpire in this case. The undersigned does not recommend that Judge Fitzwater order that the appraisal process follow any timeline or proceed under a certain protocol set by the Court. Instead, the undersigned recommends that he leave the details of the appraisal process to the appraisers and the umpire assigned to that task. The undersigned recommends that Judge Fitzwater abate the case, order the parties to file a status report periodically to apprise the Court of the progress of the appraisal, and direct the Clerk of Court to administratively close the case pending completion of the appraisal.

## IV. CONCLUSION

For the foregoing reasons, the undersigned **RECOMMENDS** that Senior United States District Judge Sidney A. Fitzwater **GRANT** Plaintiff's Motion to Compel Appraisal and to Appoint Umpire (ECF No. 15) to the extent that Mark Packard be appointed umpire in the appraisal process provided for in the insurance policy at issue, and otherwise **DENY** the Motion. The undersigned further **RECOMMENDS** that this case be abated until the parties complete the appraisal process, the parties be ordered to file a joint status report every sixty (60) days informing the Court of the status of the completion of the appraisal, and the Clerk of Court be directed to administratively close the case pending completion of the appraisal.

A copy of this Findings, Conclusions, and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Findings, Conclusions, and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

It is so **ORDERED** on **November 8**, **2018**.

*Hal R. Ray, Jr.*
Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE